**GROVE LABORATORIES, a division of Bristol-Myers Company, Petitioner,**

v.

**FEDERAL TRADE COMMISSION, Respondent.**

No. 25126.

United States Court of Appeals Fifth Circuit.

Oct. 14, 1969.

490

Charles L. Gowen, King & Spalding, Atlanta, Ga., Gilbert H. Weil, Weil & Lee, New York City, for petitioner.

James McI. Henderson, Gen. Counsel, J. B. Truly, Asst. Gen. Counsel, David B. Morris, Charles C. Moore, Jr., Attys., F.T.C., Washington, D. C., for respondent.

Before COLEMAN and GOLDBERG, Circuit Judges, and SKELTON,* Judge of the Court of Claims.

SKELTON, Judge:

The Petitioner, Grove Laboratories, is an unincorporated division of Bristol-Myers Company, a Delaware Corporation, with its principal place of business in New York, New York. It is engaged in the sale and distribution of two prod-

* Sitting by designation as a member of this panel.

ucts for the treatment of hemorrhoids which are Pazo Formula Ointment and Pazo Formula Suppositories. The sale of these products is substantial and the sales and advertising in connection therewith are in commerce as defined in the Federal Trade Commission Act, *infra*.

This case involved a petition to review and set aside an order of the Federal Trade Commission issued to the petitioner at the conclusion of an administrative proceeding to cease and desist certain advertising practices, which order was issued upon a complaint charging petitioner with engaging in unfair and deceptive acts and practices in commerce in violation of Sections 5 and 12 of the Federal Trade Commission Act, namely:

Section 5(a) (1), 52 Stat. 111 (1938), 15 U.S.C. § 45(a) (1) (1964):

Unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are hereby declared unlawful.

Section 12, 52 Stat. 114 (1938), 15 U.S.C. § 52 (1964):

(a) It shall be unlawful for any person, partnership, or corporation to disseminate, or cause to be disseminated, any false advertisement—

(1) By United States mails, or in commerce by any means, for the purpose of inducing, or which is likely to induce, directly or indirectly, the purchase of food, drugs, devices, or cosmetics; or

(2) By any means, for the purpose of inducing, or which is likely to induce, directly or indirectly, the purchase in commerce of food, drugs, devices, or cosmetics.

(b) The dissemination or the causing to be disseminated of any false advertisement within the provisions of subsection (a) of this section shall be an unfair or deceptive act or practice in commerce within the meaning of Section 5.

The case was begun by the issuance of an administrative complaint by the Federal Trade Commission, hereinafter called Commission, on August 28, 1964, against the petitioner charging that it was engaged in unfair and deceptive acts and practices with respect to the advertising of its two hemorrhoid products mentioned above. The complaint alleged that in the course of its business the petitioner published advertisements in magazines, newspapers, and other advertising media, which represented that the use of Pazo Ointment or Suppositories will:

1. Shrink hemorrhoids;

2. Avoid the need for surgery as a treatment for hemorrhoids;

3. Eliminate all itching due to or ascribed to hemorrhoids;

4. Relieve all pain attributed to or caused by hemorrhoids; and

5. Heal or cure hemorrhoids.

The Commission alleged in its complaint that these representations were false for the reason that the use of these products would not accomplish such results. The petitioner admitted in its answer that it had published such advertisements, but denied that the representations contained therein were false.

No evidentiary hearings were had in the case because the parties entered into a stipulation that the record of hearings and exhibits in another similar case, namely, in the matter of American Home Products Corporation, Docket No. 8641,[1]

---

[1] The Commission issued a complaint against American Home Products Corporation at the same time the complaint was issued against the petitioner herein which was similar to that involved in this case and on the basis of which a cease and desist order was issued against such corporation with reference to its advertising of two products called Preparation H Ointment and Preparation H Suppositories. That case was appealed to the United States Court of Appeals for the Sixth Circuit and was decided by that court on October 18, 1968. American Home Products Corp. v. Federal Trade Commission, 6 Cir., 1968, 402 F.2d 232. This opinion has been a great help to us and we have borrowed from it in arriving at our decision.

were incorporated by reference into and made a part of the record in this proceeding and that no further evidence or testimony would be introduced into the record of this proceeding and that the hearing examiner could base his decision thereon. It was further stipulated that the effect of the use of the petitioner's products is not significantly different from the effect of the use of American Home Products Corporation's products, which are named below.

Based upon this stipulation, the hearing examiner filed an initial decision in which he found that the use of Pazo Formula Ointment or Suppositories will not avoid the need for surgery as a treatment for hemorrhoids where surgery is indicated. He further found that the use of these products will have a significant therapeutic effect in the treatment of hemorrhoids, and will, in most cases, but not in all instances:

1. Shrink hemorrhoids;
2. Eliminate itching due to hemorrhoids;
3. Relieve pain caused by hemorrhoids; and
4. Promote the healing of hemorrhoids.

Accordingly, the examiner decided that petitioner had engaged in unfair and deceptive acts and practices in commerce in violation of Sections 5 and 12 of the Federal Trade Commission Act and he entered an order to cease and desist which prohibited petitioner from advertising that the use of Pazo Formula Ointment or Suppositories will:

1. Shrink hemorrhoids in all cases;
2. Avoid the need for surgery as a treatment for hemorrhoids where surgery is indicated;
3. Eliminate itching due to or ascribed to hemorrhoids in all cases;
4. Relieve pain attributed to or caused by hemorrhoids in all cases; or
5. Promote the healing of hemorrhoids in all cases.

However, the order of the examiner permitted the petitioner to advertise that the use of Pazo will, in most cases:

1. Be of significant therapeutic effect in the treatment of hemorrhoids;
2. Enable persons with hemorrhoids to avoid surgery except in unusually severe or persistent cases;
3. Shrink hemorrhoids;
4. Eliminate itching due to hemorrhoids;
5. Relieve pain due to hemorrhoids; or
6. Promote the healing of hemorrhoids.

The government appealed from the examiner's decision to the Commission, but the petitioner did not appeal.

The Commission found the following advertisement to be typical of the statements and representations contained in Pazo advertisements:

RESEARCH FINDS NEW FAST WAY TO SHRINK HEMORRHOIDS WITHOUT SURGERY

RELIEVE HEMORRHOID SWELLING AND PAIN, ENJOY LIFE AGAIN WITH PAZO FORMULA

Recent research reveals fast new way to shrink hemorrhoid tissues, stop pain and itching—all without surgery. It's a combination of *seven* modern medications in *one* complete formula: The Pazo Formula.

NEW, RELIABLE RELIEF. The Pazo Formula is the *only* leading formula with these seven active ingredients to shrink and soothe hemorrhoid tissues. Research shows this new, superior combination brings symptomatic relief even to longtime pile sufferers.

CLINICALLY TESTED BY DOCTORS. The Pazo Formula actually proves to do *more* than just shrink hemorrhoids. It also relieves pain and itching promptly, fights infection, promotes healing, and lubricates membranes.

The Commission found that advertisements of this kind represent that the use of Pazo Formula Ointment and Suppositories will:

1. Shrink hemorrhoids;
2. Avoid the need for surgery as a treatment for hemorrhoids;
3. Eliminate all itching due to or ascribed to hemorrhoids;
4. Relieve all pain attributed to or caused by hemorrhoids; and
5. Heal or cure hemorrhoids.

The Commission found and concluded from the entire record as follows:

1. That Pazo will not avoid the need for surgery where it is indicated, or heal or cure hemorrhoids;
2. That Pazo cannot reduce the size of hemorrhoidal veins;
3. That Pazo may in some cases afford some temporary relief against some types of pain and some types of itching associated with hemorrhoids; and
4. Except for the above-mentioned effects, as well as possible psychological benefits, the use of Pazo will not have any beneficial effect in the treatment or relief of hemorrhoids or any of its symptoms.

The Commission also found that the petitioner's advertising was false and misleading as shown by the above findings and set aside the examiner's decision and issued its own cease and desist order as follows:

I. IT IS ORDERED that respondent Bristol-Myers Company, a corporation, and its officers, representatives, agents and employees, directly or through any corporate or other device, do forthwith cease and desist from disseminating or causing the dissemination of any advertisement by means of the United States mails or by any means in commerce, as "commerce" is defined in the Federal Trade Commission Act:

A. In connection with the offering for sale, sale or distribution of The Pazo Formula Ointment and The Pazo Formula Hemorrhoid Suppositories, or any other product offered for sale for the treatment or relief of hemorrhoids or piles or any of its symptoms, which:

1. Represents directly or by implication that the use of such product will:

(a) Reduce or shrink hemorrhoids or hemorrhoidal tissue or membranes or reduce or shrink swelling associated with hemorrhoids;

(b) Avoid the need for surgery as a treatment for hemorrhoids or hemorrhoidal symptoms;

(c) Heal or cure hemorrhoids or promote the healing or curing of hemorrhoids;

(d) Afford any relief from pain or itching attributed to or caused by hemorrhoids in excess of affording some temporary relief in some cases of pain and itching associated with some types of hemorrhoids; or

(e) Afford any other type of relief or have any other therapeutic effect upon the condition known as hemorrhoids or upon any of the symptoms or manifestations thereof.

2. Contains any reference (a) to any word or words which implies or imply that said product will shrink hemorrhoids or (b) to any word or words which implies or imply that said product will provide any relief from pain or itching associated with hemorrhoids in excess of affording some temporary relief in some cases of pain and itching associated with some types of hemorrhoids;

3. Contains any general or specific reference to any ingredient either singly or in combination unless each such ingredient referred to is effective in the treatment or relief of hemorrhoids or any of its symptoms and unless the specific effect thereof is expressly and truthfully set forth; or

4. Makes any statement claiming or implying that said product is more effective in the treatment or relief of hemorrhoids than other preparations

sold for the treatment or relief of hemorrhoids.

B. In connection with the offering for sale, sale or distribution of any "drug" within the meaning of the Federal Trade Commission Act, including without limitation, any product referred to in Paragraph I(A) hereof, which misrepresents directly or by implication the efficacy of such drug.

II. IT IS FURTHER ORDERED that respondent do forthwith cease and desist from disseminating or causing to be disseminated, by any means, for, the purpose of inducing, or which is likely to induce, directly or indirectly, the purchase of respondent's drugs in commerce, as "commerce" is defined in the Federal Trade Commission Act, any advertisement which contains any of the representations prohibited in Paragraphs I(A) and I(B) hereof.

III. In the event that respondent at any time in the future markets any preparation for the treatment or relief of hemorrhoids or any of its symtoms for which it desires to make any of the representations now prohibited under Paragraph I(A) of this order, it may petition the Commission for a modification of the order. Such petition shall be accompanied by a showing that the representation is not false or misleading within the meaning of the Federal Trade Commission Act, and if such has been the case, that the specific representation has been approved by the Secretary of the Department of Health, Education and Welfare under the provisions of the Federal Food, Drug and Cosmetic Act as it is presently constituted or as it may hereafter be amended.

The petitioner challenges the Commission's findings and order with two basic arguments which are:

1. The Commission's findings are not based upon substantial evidence, and

2. The Commission's order to cease and desist is invalid because it is vague and too broad in scope in various particulars.

The parties agree that the use of Pazo will not:

1. Shrink the hemorrhoidal veins themselves;

2. Avoid the need for surgery where it is indicated;

3. Heal or cure hemorrhoids; and

4. Eliminate all itch and all pain due to hemorrhoids.

The parties are in basic disagreement as to whether advertisements which state that Pazo "shrinks hemorrhoids," "promotes healing," and "relieves pain and itching" are false. It appears that the definition and meaning of the term "hemorrhoid" controls the meaning of the phrase "shrinks hemorrhoids." The Commission used the medical approach in defining the term "hemorrhoid." Its conclusions in this regard are based upon the testimony of nine physicians who specialize in diseases of the rectal area including hemorrhoids. Their testimony showed that hemorrhoids or "piles" are dilated or varicose veins located in the lower portions of the rectal area. These are divided into two types, namely, internal and external. Internal hemorrhoids occur in the top part of the anal canal and external hemorrhoids occur in the lower portions of the anal canal below the pectinate line. The most common symptoms of internal hemorrhoids are bleeding and "prolapse." The most common symptoms of external hemorrhoids are pain and swelling which is frequently caused by blood clot (thrombosis) inflammation, swelling, or ulceration. Itching is not a common symptom of either type of hemorrhoids, but is believed to be caused by some other disease. The medical proof further showed that symptoms of hemorrhoids often disappear within periods of time ranging from several days to several weeks, but the underlying cause, namely, the dilated vein will persist unless corrected and will cause recur-

ring periods of such symptoms. Surgical removal is the only means by which hemorrhoids can be cured.

The medical testimony indicated several ways of treating hemorrhoids. For instance, the symptoms of simple, uncomplicated, and small internal hemorrhoids can frequently be relieved by injections or by the "baron ligation" method, whereby a rubber band is placed around the hemorrhoids. Where surgery, injections, or the ligation method are not used, a course of treatment may be prescribed which is known as "conservative" treatment. This method consists of a soft diet, cleanliness, warm baths, and the application of ointments and suppositories. The ointment and suppositories contain lubricants which may protect the anal canal against the passage of hard, dry stool. Such lubricants also provide psychological or mental relief to some sufferers.

All of these physicians, who were experts on the disease of hemorrhoids testified that the use of the petitioner's products will not shrink or reduce hemorrhoids, will not avoid the need for surgery, and will not afford any relief or have any therapeutic effect upon hemorrhoids or their symptoms in excess of affording temporary relief of minor pain or minor itching associated with hemorrhoids. If the pain or itching is intense, the products will not bring relief and the only cure is surgery. Based on this expert medical testimony, the Commission found that the term "hemorrhoid" means and should be defined as a dilated or varicose vein. If such a definition is used, it is clear that petitioner's Pazo products will not and cannot "shrink hemorrhoids."

However, the petitioner takes issue with the foregoing definition of the term "hemorrhoid" and says that this term means and should be defined as including the tissue surrounding the vein as well as the vein itself and therefore, the use of Pazo can shrink the inflamed tissue and give relief. The petitioner called ten physicians and seven laymen as witnesses. The physicians had conducted studies of the effect of the use of petitioner's products on hemorrhoids and the lay witnesses testified as to the benefits and satisfaction which they had obtained by using petitioner's products themselves.

There was, and is, a further dispute between the parties with reference to other phrases used by petitioner in advertising its products. For instance, the petitioner contends that the phrase "promotes healing" does not mean that its products will or may eventually heal or cure hemorrhoids. The Commission, on the other hand, says that the phrase "promotes healing" when taken in connection with the entire advertisement, will cause the public to believe that the use of Pazo products will, within a reasonable period of time, lead to the healing of hemorrhoids.

Also, the Commission says that the phrase, relieves "pain and itching," can be interpreted by the public to mean that the use of these products will eliminate all pain and itching for all users of the product who suffer from hemorrhoids. But the petitioner contends that the phrase "relieves pain and itching" does not mean "relieves all pain and itching for all users." The Commission found that the use of these products "may in some cases afford some temporary relief" from some types of pain and itching associated with hemorrhoids. The petitioner contends that the use of its products will relieve these symptoms in most cases.

■ It is clear that the validity of the Commission's order depends upon the definition of the term "hemorrhoid." The Commission has based its definition on the medical description of the malady as revealed by the testimony of the physicians who gave evidence in this case. However, we are not here concerned with the meaning of the term "hemorrhoid" that would be satisfactory to a physician or surgeon, but rather with the meaning that would be conveyed by petitioner's advertisement of its products to the average reader who is having trouble

with hemorrhoids. We are convinced that the average sufferer of hemorrhoids would not be able to distinguish between symptoms that come from varicose veins and those which emanate from surrounding tissue in the area of the varicose vein. In fact, it is doubtful if the average sufferer of hemorrhoids knows the real cause of his trouble nor exactly where the symptoms originate. Consequently, we must view the petitioner's advertisements of its Pazo products from the standpoint of the average reader and the meaning which they convey to him rather than as viewed by a physician, surgeon, or other member of the medical profession. We think that any definition of hemorrhoids must not only include the varicose veins, but also all affected tissues surrounding and adjacent to the vein. We agree with the definition of the term given by the court in American Home Products Corp. v. Federal Trade Commission, *supra*, as follows:

* * * The only realistic definition of "hemorrhoid," as used in petitioner's advertisements, is to regard it as including not only the varicose vein itself but also the tissue contiguous to the vein. This is what the term means to the average person, and it is the average person with whom we are here concerned. In this manner, symptoms and attendant difficulties associated with hemorrhoids are recognized in the definition. * * *.

■ In view of this definition of the term "hemorrhoid," which we approve, we conclude that there is substantial evidence that hemorrhoids can be permanently cured only through the surgical removal of the affected varicose vein; that petitioner's products will not shrink the hemorrhoidal vein itself, nor eliminate the need for surgery where it is indicated, nor eliminate all itching and all pain due to hemorrhoids in every case. However, in our opinion, there is no substantial evidence that will support the Commission's findings that the Pazo products will not afford temporary relief from the pain and itching connected

with hemorrhoids in many cases, nor that these products will not help to reduce swelling associated with hemorrhoids and caused by edema, infection, or inflammation, except to the extent that such swelling is in the varicose vein itself.

■ In view of these findings and conclusions, we think that the portion of the Commissioner's order which prohibits representations that Pazo products will relieve pain and itching and reduce swelling associated with hemorrhoids is entirely too broad. The order should be modified to provide that the petitioner may advertise that Pazo products will afford, in many cases, temporary relief from pain and itching associated with hemorrhoids, and that they will help to reduce swelling associated with hemorrhoids and caused by edema, infection or inflammation, except to the extent that such swelling is in the hemorrhoidal vein itself; and otherwise modified to conform to the views expressed in this opinion.

The petitioner vigorously attacks that portion of the Commissioner's order (IB) which prohibits the petitioner from offering for sale or disposition any "drug" within the meaning of the Federal Trade Commission Act, including without limitation any product referred to in paragraph IA, which misrepresents directly or by implication the efficacy of such drug. It will be noted that this prohibition refers to any and all drugs which may be sold by the petitioner and not just to those confined to the treatment of hemorrhoids. In other words, it is an all encompassing prohibition that covers all drugs of every kind and character. It would subject the petitioner to contempt penalties as set forth in the Act should it be violated with respect to any drug sold by the petitioner. The petitioner complains that such an order is too broad and is punitive in nature and removes the enforcement of the Act from the Commission and places it in the hands of the District Courts. The Commission counters this argument by contending that the petitioner Grove and its

parent company, Bristol-Myers, have been the object of no less than six formal Commission proceedings involving misrepresentations of the therapeutic value of preparations for the relief and treatment of hemorrhoids; the common cold; mouth, tooth, or gum disease; baldness, and various skin diseases, including dandruff and other scalp disorders. It says that four of these cases proceeded to final order and two were terminated by stipulations of discontinuance. The Commission argues that under such circumstances it is authorized to consider the frequency and duration of violations and the business and competitive history of the petitioner, including evidence of past violations and the likelihood that it knew or should have known that its conduct was unlawful, citing Joseph A. Kaplan & Sons, Inc. v. Federal Trade Commission, 1965, 121 U.S.App.D.C. 1, 347 F.2d 785, 789; Carter Products, Inc. v. Federal Trade Commission, 5 Cir. 1963, 323 F.2d 523, 532–533; and Federal Trade Commission v. National Lead Co., 352 U.S. 419, 429, 77 S.Ct. 502, 1 L.Ed.2d 438 (1957). The Commission felt that it was obligated to include all future drug products in the order instead of limiting the order to preparations to hemorrhoids, saying:

> * * * We are equally convinced that it is essential that this order also "fence this [petitioner] in" in connection with all of its future advertising of drug preparations. It is our judgment that in the circumstances of this case and of this [petitioner], it is essential that the order which we are entering cover all drug products sold by [petitioner].

The petitioner argues that these cases occurred many years ago and that the facts involved therein were different to those in the case before us and that the facts and circumstances that existed in those cases do not justify the broad order which the Commission has entered in our case. While this may be a close question in view of the past record of the petitioner and its parent company, we are inclined to sustain the petitioner's argument that the order is too broad in this particular case. This is especially true in view of the fact that the court in American Home Products Corp. v. Federal Trade Commission, *supra,* held that this part of the order was too broad insofar as it affected the petitioner in that case. The court there held that the Commissioner's order must bear a reasonable relationship to the unlawful practice found to exist citing Federal Trade Commission v. Ruberoid Co., 343 U.S. 470, 72 S.Ct. 800, 96 L.Ed. 1081 (1952); Jacob Siegel Co. v. Federal Trade Commission, 327 U.S. 608, 66 S.Ct. 758, 90 L.Ed. 888 (1946); and Sandura Company v. Federal Trade Commission, 6 Cir. 1964, 339 F.2d 847. The court stated that the proceeding before them dealt exclusively with representations as to Preparation H and no other drug was involved. Furthermore, the court said that it was not established that petitioner was a habitual violator of the Federal Trade Commission Act even though it was not a first offender. The court held that such an order would transfer the enforcement of the Act to the district courts and this was not within the contemplation of the Act.

Inasmuch as our case and that of *American Home Products* are companion cases involving substantially the same facts and involving two competing companies who produce and sell almost identical products that are designed and used for the same purpose, namely the treatment of hemorrhoids, it is our view that even if the past history of the two companies in complying with the Federal Trade Commission Act is not identical, nevertheless, we should require the same modification of the order as to paragraph IB as was required by the court in the *American Home Products* case. Accordingly, paragraph IB should be eliminated from the order, although the Commission should be commended for its conscientious efforts to protect the public.

We are bound by the findings of the Commission if they are supported by substantial evidence. Universal

Camera Corp. v. NLRB, 340 U.S. 474, 493–495, 71 S.Ct. 456, 95 L.Ed. 456 (1951); Standard Distributors, Inc. v. Federal Trade Commission, 2d Cir. 1954, 211 F.2d 7, 12; De Gorter v. Federal Trade Commission, 9th Cir. 1957, 244 F.2d 270, 273. There is substantial evidence in the record to support most of the Commission's order, and to that extent the order will be enforced. However, as pointed out above, there is no substantial evidence to support the indicated provisions of the Commission's order and to that extent the order will be modified.

The Commission's order is affirmed and enforcement is granted subject to the modifications herein noted. The case is remanded to the Federal Trade Commission for proceedings consistent with this opinion.

Remanded.